UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA D., | ) |
| Plaintiff, | ) ) ) No. 18 cv 8168 |
| v. | ) ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration[1], | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela D.[2] applied for both Disability Insurance Benefits and Supplemental Security Benefits on December 22, 2015, alleging a disability onset date of September 1, 2015. [Administrative Record ("R.") 346-54]. Plaintiff's claims were denied initially and again upon reconsideration. [R. 15.] Following these denials, Plaintiff appeared at a September 6, 2017 Administrative Hearing before Administrative Law Judge ("ALJ") Patricia Witkowski Supergan.[3] [R. 36-81.] On December 21, 2017 ALJ Bretthauer issued an unfavorable decision. [R 15-26.] Plaintiff requested and was denied Appeals Council review [R. 1-5], thus making the Decision of the Appeals Council the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Plaintiff filed the instant action on December 12, 2018, seeking review of the Commissioner's decision. [Dkt. 1.]

Plaintiff has filed a motion for summary judgment [dkt. 18]. The Commissioner has filed a Memorandum in Support of Motion for Summary Judgment, which the Court construes as a cross-

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule Civil Procedure 25(d), he is hereby substituted as Defendant.

[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s). Plaintiff in this action was formerly known by her married name of Angela M., but the records reflect a name change back to her maiden name of Angela D., and we have updated this Opinion accordingly. [R. 36, 38, 355.]

[3] The Administrative Record also contains the transcripts from two prior administrative hearings (November 29, 2007 [R. 125-84] and May 20, 2008 [R. 84-122]), but the Court has no other information about any prior Social Security Administration claims or the disposition of the same related to Plaintiff.

motion for summary judgment [dkt. 27]. Plaintiff has filed her reply brief [dkt. 28]. This matter is now fully ripe for disposition.

Although she is represented by counsel, Plaintiff herself has also filed two packets of information [dkts. 16 and 20], both styled as updates to the Court. As the Court's role here is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria, *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004), neither of these packets were considered by the Court in reaching its decision herein. The ALJ did not have these documents at the time of her decision and, thus, they are not properly part of the Court's scope of review of the final decision of the Commissioner.

**I.     Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995,

1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck*, 357 F.3d at 699. Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## II. The ALJ's Decision

On December 21, 2017, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 15-26.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 1, 2015. [R. 17.] At Step Two, the ALJ found that Plaintiff had the severe impairments of asthma; fibroid tumors; degenerative joint disease of the bilateral knees and legs; degenerative disc disease; depression; and ETOH/THC abuse. *Id.* The ALJ found Plaintiff's deep vein thrombosis and learning disorder to be nonsevere impairments. [R. 18.] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or

3

medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 18-20.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to perform sedentary work with the following nonexertional limitations: occasional climbing of ramps and stairs, but never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; occasional exposure to and/or work around extreme cold and heat, wetness, vibration, fumes and other pulmonary irritants, and hazards such as moving machinery or unprotected heights; and performance of simple, routine tasks requiring no more than short simple instructions and simple, work-related decision making with few workplace changes. [R. 20-24.] At Step Four, the ALJ determined that Plaintiff had no past relevant work. [R. 24.] The ALJ then identified jobs existing in significant numbers in the national economy Plaintiff could perform. [R. 25.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 26.]

## III. Discussion

Among other things, Plaintiff asserts the ALJ improperly addressed the opinion of Plaintiff's treating psychiatrist, Dr. Richard Bongard, M.D., and that this is grounds for remand. The Court agrees, finding several remandable issues with the ALJ's treatment of Dr. Bongard's opinions.

The ALJ's entire treatment of the medical opinions of Dr. Bongard amounts is as follows:

> One of the claimant's treating sources, Dr. Beaugard (sic),[5] opined the claimant would be off task for ten percent or less of an eight hour workday, five days a week, in a competitive work environment; and would miss two days or less of work per month as a result of her impairments and need for ongoing and periodic medical treatment/care. The opinion is based upon the claimant's subjective complaints and appear (sic) to be a sympathetic opinion, as it is not supported by the objective/clinical findings.

---

[4]    RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

[5]    Both the ALJ and Plaintiff's counsel misidentify Dr. Bongard as Dr. Beaugard. It appears this misidentification might have arisen from the typo at the top of the Mental Residual Functional Capacity Statement it appears Plaintiff's counsel prepared for the physician to fill out in connection with Plaintiff's disability claim [R. 774], but medical records from Aunt Martha's Medical Center, the facility where Plaintiff saw the doctor, clearly list the physician's name as Dr. Bongard [*e.g.*, R. 760], so the Court defers to the facility's records and uses Dr. Bongard throughout this Memorandum Opinion and Order.

[R. 24 (citing the Mental Residual Functional Capacity Statement at R. 774-77).]

The rules governing an ALJ's evaluation of a treating source's opinion require the ALJ to consider the length of the treating relationship, the frequency of examination, the doctor's specialization, and whether the opinion is supported by and consistent with the record as a whole. See 20 C.F.R. § 404.1527(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir.2009). These rules are "designed to strike a balance between the benefit that derives from a treating physician's ability to observe a claimant over an extended period and the danger that the same doctor will be too quick to find disability out of loyalty to, or sympathy for, the patient." *Kimak v. Colvin*, 2014 WL 1758638, at *7 (N.D. Ill. May 2, 2014) (citing *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir.2011)).

Here, the ALJ skipped over the required factors governing the weighing of medical opinions and gave reasons for discounting Dr. Bongard's opinion that failed to provide a "logical bridge" between the record and her conclusion. Absent from the ALJ's decision to discard Dr. Bongard's opinions is any discussion of the length and frequency of his treating relationship with Plaintiff, his specialization in psychiatry, and his knowledge of Plaintiff's impairments. See 20 C.F.R. § 404.1527(c). That absence is particularly concerning because Dr. Bongard's is a psychiatrist who had treated Plaintiff for depression, one of the conditions she claims is disabling her, and which the ALJ found was a severe impairment. Had she weighed those factors explicitly, the ALJ might have concluded that Dr. Bongard's medical opinions are entitled to more than the reduced weight she assigned them.

Additionally, the Court is troubled by the internal inconsistencies in the ALJ's opinion on the issue of Plaintiff's mental health treatment. The ALJ seems to be under the erroneous impression that Plaintiff was not receiving any specialized treatment for mental health. For instance, the ALJ lists a "notable absence of…mental therapy." [R. 22.] The ALJ also writes that Plaintiff "has not received any treatment from a specialist rather than simply relying on a primary care physician, and despite exhibiting depressive symptoms on occasions, the objective clinical findings show progressive

5

improvement in the [Plaintiff's] mood and affect with ongoing psychiatric treatment." Because Plaintiff did in fact receive psychiatric treatment from Dr. Bongard (although the ALJ fails to identify it as such), the ALJ's opinion is, at best, internally inconsistent, and at worst, simply erroneous as to whether Plaintiff received specialized therapy for her mental health. The Court declines to overlook these issues particularly because the ALJ determined that Plaintiff's depression is a severe disorder.

Next, the ALJ speculated that Dr. Bongard's opinion "appear[ed] to be a sympathetic opinion." [R. 24.] "A treating physician's opinion is important because that doctor has been able to observe the claimant over a period of time, but it may also be unreliable if the doctor is sympathetic with the patient and thus 'too quickly find[s] disability.'" *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)). Generally, evidence a physician has "agreed to become an advocate and assist in presenting a meaningful petition for Social Security benefits" can constitute a specific, legitimate reason to give a medical opinion little weight. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir.1992); *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir.1988) (evidence that doctor's opinion was solicited by claimant's counsel a "permissible credibility determination"). "That said, an ALJ's mere conjecture of a sympathetic response is not an acceptable basis for ignoring the treating physician's views." *Goyco v. Colvin*, 2014 WL 5152570, at *5 (N.D. Ill. Oct. 14, 2014) (citing *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009)). "The ALJ must have a substantial evidentiary basis for finding a bias by the treating physician, and "an otherwise medically valid opinion will not be ignored merely because of speculation that the physician was sympathetic to the claimant." *Id.* The record does not reveal any evidence to suggest Dr. Bongard implicitly or explicitly agreed to become an advocate for Plaintiff in her quest for Social Security benefits, nor that he had any specific loyalty to, or sympathy for, Plaintiff. *Kimak*, 2014 WL 1758638, at *7. Moreover, at the time of the administrative hearing, Dr. Bongard was not even Plaintiff's treater any longer. [R. 54.] Plaintiff testified she had already begun seeing another psychiatrist from the same practice

group as Dr. Bongard. *Id.* The Court does not find persuasive the ALJ's proffered (lack of) reasoning as to why she felt this was a sympathetic opinion.

Lastly, the ALJ uses imprecise, boilerplate language to describe Dr. Bongard's opinion as "not supported by the objective/clinical findings" [R. 24], which leaves the Court at a loss to understand or analyze which of Dr. Bongard's opinions is allegedly unsupported by which clinical findings. Without further explanation, the ALJ's boilerplate conclusions defy meaningful review. *See Bjornson v. Astrue*, 671 F.3d 640, 644-645 (7th Cir. 2011) (collecting cases where Seventh Circuit criticized use of similar "opaque boilerplate" language); *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir.1995) (ALJ must offer a minimum level of articulation of her analysis of the evidence to allow the court to trace the path of his reasoning). Thus, the ALJ failed to "build an accurate and logical bridge from the evidence to the conclusion," which prevented the Court from performing an informed review of the ALJ's treatment of Dr. Bongard's opinions. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir.2008).

Finally, even if the ALJ had given "good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion." *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (citing, *inter alia,* 20 C.F.R. § 404.1527(d)(2)). Here, however, the ALJ never specified what weight, if any, she gave to Dr. Bongard's opinion. It is impossible to tell whether she gave little weight or no weight to Dr. Bongard's opinions, and thus, there is no "logical bridge" for the Court to follow from the ALJ's treatment of Dr. Bongard's opinions to the RFC crafted by the ALJ.

Accordingly, for all the reasons enunciated above, the ALJ's proffered reasoning for discounting Dr. Bongard's opinion does not hold up under the substantial evidence standard, and The Court must remand on this basis.

## IV. Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with

7

this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 18] is GRANTED; the Commissioner's motion for summary judgment [dkt. 27] is DENIED.

Entered: 1/27/2020

_____

Susan E. Cox,
United States Magistrate Judge